IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALEXANDER VALDEZ GINES<br><br>            Plaintiff,<br><br>  vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>            Defendant. | Civ. No. 16-00254 JMS-KSC<br><br>ORDER REMANDING THE CASE PURSUANT TO § 405(g) FOR FURTHER PROCEEDINGS |

## ORDER REMANDING THE CASE PURSUANT TO § 405(g) FOR FURTHER PROCEEDINGS

### I. INTRODUCTION

This is an action brought under 42 U.S.C. § 405(g) to review a final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin (the "Commissioner," or "Defendant"). Alexander Valdez Gines ("Plaintiff") appeals Defendant's adoption of the Administrative Law Judge's (the "ALJ") February 20, 2015 decision finding Plaintiff not disabled under the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f (the "February 20 Decision"). Plaintiff argues that the February 20 Decision must be overturned because the ALJ (1) abused her discretion in refusing to forward Plaintiff's interrogatories to the consultative

1

examiner; and (2) failed to adequately develop the record. Based on the following, the court REMANDS the case pursuant to § 405(g) for further proceedings.

## II. BACKGROUND

**A.   Factual Background**

Plaintiff, born in 1964, worked in construction until he was laid off in 2009. Admin. R. ("AR") at 33, ECF No. 11. He returned to his job in December 2010 but, after a couple of days, was once again let go. *Id.* Although he has attempted to interview for jobs since December 2010, he has not worked since that time. *Id.* at 33-34.

Plaintiff filed for Social Security and Disability Insurance benefits on October 17, 2012, alleging disability since May 15, 2010, due to the combination of gout, psoriasis, high blood pressure, and high cholesterol. *Id.* at 129, 207. His claim was denied twice -- once on February 20, 2013, and again upon reconsideration on September 19, 2013. *Id.* at 45, 55. On October 12, 2013, Plaintiff filed a request for a hearing. *Id.* at 80-81. A hearing was conducted on August 12, 2014 ("August 12 Hearing"), before the ALJ, in which Plaintiff and vocational expert David Dettmer testified. *Id.* at 29-44. Including the information summarized above, the ALJ had access to medical reports by Plaintiff's treating physician, Dr. Harry Acuna. *Id.* at 19. In addition, the ALJ permitted a post-

hearing consultative examination that took place on November 3, 2014, by Dr. Nalani Gauen. *Id.*

### 1.   *Plaintiff's Testimony and Statements*

Plaintiff testified that he worked in construction until July 2009, and upon further questioning by the ALJ, corrected his testimony to include a brief period of work in December 2010. *Id.* at 33.  Since then, he has attempted to interview for other jobs, but because of gout "flare-ups," was unable to make the interviews. *Id.* at 34.

When Plaintiff has a gout flare-up, he experiences intense soreness, to the point where he "scream[s]" when "even the wind blows on it." *Id.* at 35.  The flare-ups cause his feet to swell so much that he cannot wear shoes. *Id.* at 36.  Because of the discomfort in his feet, he is uncomfortable sitting. *Id.*  To deal with a flare-up, Plaintiff lies in bed and elevates his feet, as he was told by his treating physician, Dr. Acuna. *Id.* at 36.  The flare-ups last between four days and two weeks, and require Plaintiff to use crutches to walk. *Id.* at 37-38.

Plaintiff suffered "about three or four" flare-ups between January 1, 2014, and the August 12, 2014 hearing. *Id.* at 35.  Dr. Acuna told Plaintiff to change his diet to alleviate the symptoms from Plaintiff's gout, so Plaintiff "tried

3

juicing for a couple months" as recommended by his friend, but did not see any changes.  *Id.* at 34-35, 38.

### 2. *Dr. Acuna's Medical Reports*

Dr. Acuna treated Plaintiff during the time period relevant to this case. *Id.* at 256-312, 315-341 (medical records ranging from November 22, 2003, to June 28, 2013).  Throughout Dr. Acuna's records of Plaintiff's exams, he notes that Plaintiff, although exhibiting symptoms of gout and pedal edema, maintained normal gait and station and had adequate range of movement in all extremities. *See, e.g.*, *id.* at 258, 260, 263, 268 (exams dated January 5, 2012; October 7 and June 1, 2011; and March 4, 2010).

In a February 13, 2013 questionnaire, Dr. Acuna reported that Plaintiff had "full" range of motion of upper and lower extremities, "normal" gait and station, and was "able to use both hands for gross and dexterous movement." *Id.* at 313-14.  In another questionnaire on July 11, 2014, Dr. Acuna wrote that Plaintiff experienced gout flare-ups on October 18 and November 2, 2013, and on May 24, 2014.  *Id.* at 365.  He further noted that Plaintiff was not physically limited during flare-ups, and could in fact sit in a working position for eight hours a day without any lifting limitations.  *Id.* at 365-66.

### 3. Dr. Gauen's Consultative Examination

After Plaintiff's testimony, the ALJ had an on-the-record exchange with Plaintiff's attorney. The ALJ observed that "even during the flares, for the most part there's no swelling. There's normal gait. There's full range of motion of the extremities." *Id.* at 39. In response, Plaintiff's attorney complained that Plaintiff is "kind of at a disadvantage because of Dr. Acuna's reluctance to give [them] a little more information" and requested a post-hearing consultative examination ("CE"). *Id.* at 40. The ALJ agreed to a post-hearing CE. *Id.*

Dr. Nalani Gauen performed Plaintiff's CE on November 3, 2014. *Id.* at 369-75. Dr. Gauen's notes show that Plaintiff was referred due to complaints of gout, psoriasis, and hypertension. *Id.* at 369. Specifically, she recorded that Plaintiff complained of "gout attacks" that make him unable to walk. *Id.* Her examination of Plaintiff's lower extremities found "no evidence of swelling, effusion, erythema, warmth, or deformity of the hips, knees, and ankles. All joint ranges of motion are within normal limits." *Id.* at 372. Moreover, Dr. Gauen wrote that Plaintiff "ambulates with a normal gait." *Id.* at 373. Dr. Gauen concluded that Plaintiff could stand for up to two hours in a normal eight-hour workday, and sit without restrictions. *Id.* at 374. She further concluded that

Plaintiff could "occasionally" do certain activities, such as kneeling, crawling, and climbing stairs and ladders. *Id.*

On November 24, 2014, Dr. Gauen completed a Medical Source Statement ("MSS"). *Id.* at 377-82. In the MSS, she noted that Plaintiff was limited to standing for 30 minutes and walking for 30 minutes in a typical eight-hour workday, but could sit for up to seven hours. *Id.* at 378. She further noted that Plaintiff could perform a range of activities, such as shopping, preparing food, walk a block, and use public transportation. *Id.* at 382. She did not distinguish between limitations during and absent a flare-up.

### 4.   *Proceedings Subsequent to Dr. Gauen's CE*

On November 25, 2014, the ALJ sent Plaintiff's attorney a letter that included Dr. Gauen's findings. *Id.* at 248-49. On November 30, 2014, Plaintiff's attorney responded with a request that the ALJ forward to Dr. Gauen Plaintiff's medical records and a list of questions that Plaintiff's attorney prepared that posed hypotheticals about Plaintiff's limitations during a flare-up. *Id.* at 251. In her February 20 Decision, the ALJ denied the request from Plaintiff's attorney, finding that Dr. Gauen "offered a narrative [MSS] that sufficiently addressed his opinion of what the claimant can do despite his conditions." *Id.* at 12.

B.     **Procedural Background**

On February 20, 2015, the ALJ issued her decision finding Plaintiff not disabled. *Id.* at 22. The Appeals Council subsequently rejected Plaintiff's request to review the February 20 Decision, and the February 20 Decision became the final decision of the Commissioner on April 28, 2016. *Id.* at 1-4.

On May 5, 2016, Plaintiff filed his Complaint seeking judicial review of the February 20 Decision. Compl., ECF No. 1. On September 23, 2016, Plaintiff filed his Opening Brief, and on November 14, 2016, Defendant filed its Answering Brief. Pl.'s Br., ECF No. 16; Def.'s Br., ECF No. 19. Plaintiff filed a Reply Brief on November 28, 2016. Pl.'s Reply, ECF No. 20.

A hearing was held on January 17, 2017.

### III.  STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Social Security Act. *See* 42 U.S.C. § 405(g). In reviewing findings of fact with respect with to such determinations, the court must uphold the Commissioner's decision, made through an ALJ, "unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance."

*Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)). Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). With that said, however, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Ryan*, 528 F.3d at 1198 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

## IV. **DISCUSSION**

Disability insurance benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. *Id.* § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential analysis to assess disability claims, which asks:

> (1) Is the claimant presently working in a substantially gainful activity? If yes, the claimant is "not disabled."
>
> (2) Is the claimant's impairment severe? If no, the claimant is "not disabled."
>
> (3) Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If yes, the claimant is "disabled."
>
> (4) Is the claimant able to do any work that he or she has done in the past? If yes, the claimant is "not disabled."
>
> (5) Is the claimant able to do any other work? If yes, the claimant is "not disabled."

*See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). For steps one through four, the burden of proof is on the claimant, and if "a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.* at 1098. If the claimant reaches step five, the burden shifts to the Commissioner. *Id.*

The ALJ's February 20 Decision found that Plaintiff: (1) was not engaged in a substantial gainful activity; (2) had three severe impairments: obesity, pedal edema, and gout; (3) did not have an impairment meeting one of the list of specific impairments described in the regulations; and (4) was unable to perform

9

any past relevant work. AR at 15-21. Thus, Plaintiff survived steps one through four, shifting the burden to the Commissioner. The ALJ further found that Plaintiff failed at step five, as the Commissioner established that there were jobs existing in significant numbers in the national economy that Plaintiff could perform given Plaintiff's residual functional capacity ("RFC"). *Id.* at 21-22.

Plaintiff now argues that the ALJ erroneously (1) denied the request from Plaintiff's attorney to forward interrogatories to Dr. Gauen, and (2) failed to adequately develop the record. Pl.'s Br. at 6. Because the court finds that the ALJ failed to adequately develop the record, the court does not specifically address Plaintiff's first argument.

### A.  Relevant Case Law

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir, 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)). That is, "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen v. Chater*,

80 F.3d 1273, 1288 (9th Cir. 1996)).  Additionally, an ALJ's duty to develop the record "extends to the represented as well as to the unrepresented claimant." *Id.*

**B.     The ALJ Failed Her Duty to Adequately Develop the Record**

Plaintiff argues that the ALJ failed her duty to adequately develop the record when she denied Plaintiff's request to forward interrogatories to Dr. Gauen, because the denial prevented Dr. Gauen from commenting on what Plaintiff's disability would be during the times of his flare-ups.  The court agrees.

At the August 12 Hearing, the colloquy between the ALJ and Plaintiff's attorney shows that the ALJ, in effect, found that the record is inadequate.  AR at 39-40.  The ALJ first noted that Dr. Acuna's records do not identify special limitations during Plaintiff's flare-ups.  *Id.* at 39.  In response, Plaintiff's attorney requested a post-hearing CE to provide more information on this point, and the ALJ agreed:

> ATTY:  Well, I -- my client's kind of at a disadvantage because of Dr. Acuna's reluctance to give us a little more information.  And since he responded to the first MSS, instead of that I was going to second -- get a second one.  I mean, if there are problems now, which Mr. Gines says there are, this might be a case somewhat reluctantly for me to request a post-hearing CE.
>
> ALJ:  And --
>
> ATTY:  Is that where you were going?
>
> ALJ:  -- you're anticipating -- yes.

11

>   ATTY: Okay. I'm with you.
>
>   ALJ: Okay. All right.
>
>   ATTY: I would -- I would -- I think that's called for.
>
>   ALJ: All right.

*Id.* at 40. Although the ALJ did not explicitly state that the record is inadequate, in agreeing to a post-hearing CE, the court determines that the ALJ implicitly agreed that more information was needed concerning Plaintiff's flare-up limitations.

And it is odd that the ALJ would order a post-hearing CE but refuse to direct the post-hearing examiner, Dr. Gauen, to specifically address the primary issue -- Plaintiff's limitations during flare-ups (and not provide Dr. Gauen with Plaintiff's medical records).[1] In a letter dated August 29, 2014, Plaintiff requested that the ALJ send Dr. Gauen certain interrogatories aimed at Plaintiff's limitations during a flare-up. *Id.* at 247. When Dr. Gauen's report did not directly address the narrow question of Plaintiff's flare-up limitations -- the very question causing the ALJ to order the post-hearing CE in the first place -- Plaintiff again requested that the ALJ send the same interrogatories to Dr. Gauen. *Id.* at 251 (letter dated November 30, 2014).

---

[1] In fact, the post-hearing CE order did not direct Dr. Gauen to specifically address Plaintiff's limitations during a flare-up. AR at 368.

In her ultimate decision, the ALJ explained her refusal to send Plaintiff's interrogatories to Dr. Gauen by stating that Dr. Gauen "offered a narrative [MSS] that sufficiently addressed his opinion of what the claimant can do despite his conditions." *Id.* at 12.  But this is simply not true.  At no point in Dr. Gauen's MSS does she address whether Plaintiff has particularly severe limitations during a flare-up.  In fact, Dr. Gauen even noted that Plaintiff was not experiencing a flare-up during the exam, and that her diagnosis was limited because she lacked Plaintiff's medical records.  *Id.* at 374 ("Gout: no significant deformities on exam.  No medical records to confirm diagnosis.  Gait appeared to be normal, no acute attack at the time of exam.").

Essentially, the ALJ made a "finding that the record is inadequate to allow for proper evaluation of the evidence," *Tonapetyan*, 242 F.3d at 1150, when she found it necessary to order a post-hearing CE.  That finding triggered her duty to fully develop the record to resolve the inadequacy in the record -- the lack of information concerning Plaintiff's limitations during a flare-up.  Dr. Gauen's post-hearing CE did not resolve this inadequacy, however, because the ALJ failed to direct Dr. Gauen to specifically address Plaintiff's limitations during a flare-up.  As a result, the ALJ failed her duty to fully develop the record.

## V.  REMAND

At the January 17 hearing, the court ordered that the case be remanded to the Commissioner of Social Security.  The court requested that the parties mutually agree on the instructions for the remand.  Below is the agreed upon language, ECF No. 24, which the court adopts:

> Pursuant to the Court's January 17, 2017, order, the parties, through their undersigned attorneys, submit the following proposed order directing that this action be remanded to the Commissioner of Social Security for further administrative action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), sentence four.
>
> Upon remand, the Appeals Council will remand the case to an administrative law judge (ALJ) for a new hearing and decision. The Appeals Council will instruct the ALJ to reevaluate the medical evidence, including, but not limited to, all medical-source opinion evidence concerning physical and mental impairments, and explain the weight given to the opinion evidence in accordance with applicable agency regulations and rulings.  If appropriate, the ALJ will obtain a consultative examination pursuant to applicable agency regulations and rulings.  The Appeals Council will instruct the ALJ to reassess Plaintiff's subjective complaints consistent with applicable agency regulations and rulings.
>
> The Appeals Council will also instruct the ALJ to reevaluate whether Plaintiff has the residual functional capacity to perform her past relevant work pursuant to SSR 82-61 and 82-62 and, if appropriate, obtain supplemental vocational expert testimony to assist in determining what jobs exist, if any, for Plaintiff given [his] age, education, vocational factors and residual functional capacity.

## VI.  **CONCLUSION**

For the reasons set forth above, the court REMANDS the case pursuant to § 405(g) for further proceedings.  The clerk of court shall close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 25, 2017.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Gines v. Colvin*, Civ. No. 16-00254 JMS-KSC, Order Remanding the Case Pursuant to § 405(g) for Further Proceedings